Barbara HUTSON, Plaintiff,

v.

**A.H. ROBINS COMPANY and Karen Sherman, as Executrix of the Estate of Neil Sherman, Defendants.**

No. 93 Civ. 382 (WCC).

United States District Court, S.D. New York.

Feb. 28, 1994.

As Amended April 12, 1994.

Law Offices of Michael T. Stoller, Los Angeles, CA (Michael T. Stoller, of counsel), for plaintiff.

Sedgwick, Detert, Moran & Arnold, New York City (Kimberly S. Penner, of counsel), for Dalkon Shield Claimants Trust.

**OPINION AND ORDER**

WILLIAM C. CONNER, District Judge.

Barbara Hutson brings this action against A.H. Robins Co. ("Robins")[1] for compensato-

---

1. Robins filed a petition for relief under Chapter 11 of the Bankruptcy Code shortly after this action was commenced. The Dalkon Shield Claimant's Trust (the "Trust") was then estab-

lished under Robins' Sixth Amended and Restated Plan of Reorganization. The Trust is an independent entity whose primary objective is to resolve claims related to the Dalkon Shield be-

ry damages for personal injuries allegedly caused by her use of the Dalkon Shield intra-uterine contraceptive device, manufactured by Robins. The matter is currently before the Court on plaintiff's motion to transfer venue pursuant to 28 U.S.C. § 1404(a).[2]

Plaintiff commenced this action on July 1, 1985 in the Supreme Court of New York, New York County, at which time she was a resident of New York. Robins then filed a petition under Chapter 11 of the Bankruptcy Code in the United States District Court, Eastern District of Virginia. The Dalkon Shield Claimants Trust (the "Trust") succeeded to Robins' liabilities. Defendant Trust then removed the action in January 1993 from New York State Court to this Court pursuant to 28 U.S.C. § 1441(a). Plaintiff now wishes to have us transfer the action to the United States District Court, Central District of California, primarily because she moved from New York to California in November 1987. Plaintiff's motion is denied.

## BACKGROUND

According to both a claim form submitted by plaintiff to the Trust and certain related medical records, the facts are as follows. Dr. Neil Sherman inserted a Dalkon Shield into plaintiff on March 15, 1973 in his offices in New York City. Dr. Sherman's records contain a consent form signed by plaintiff stating that the side effects of the device had been explained to her. Dr. Sherman thereafter continued to give plaintiff routine gynecological care and treated her for pelvic inflammatory disease in May 1981. Dr. Sherman, at the request of plaintiff, removed the Dalkon Shield on November 5, 1981. On May 12, 1984, Dr. Sharon Diamond began to treat

plaintiff in New York, New York, for pelvic inflammatory disease and bleeding, and diagnosed plaintiff with non-surgical infertility. Plaintiff's husband also saw an infertility physician, Dr. Attila Toth, in New York City. Plaintiff moved her residence to California in 1987. Dr. Diamond continued to receive laboratory reports on plaintiff through the end of 1991.

The Trust's records are located in a document depository maintained in Richmond, Virginia and a catalog of those materials is located in Minneapolis, Minnesota pursuant to Amended Administrative Order No. 1 entered by the Bankruptcy court.

## DISCUSSION

Pursuant to 28 U.S.C. § 1404(a), a district court, in its discretion, may transfer a civil action "to any other district or division where it might have been brought"[3] if the moving party bears its burden of showing that such transfer is "for the convenience of parties and witnesses, in the interest of justice." The following factors may guide the determination of whether or not a transfer is warranted: (1) the convenience of the parties; (2) the convenience of the witnesses; (3) the availability of process to compel unwilling witnesses to appear; (4) the cost of obtaining witnesses; (5) the ease of access to relevant sources of proof; (6) the location of the occurrence of the events at issue; (7) the forum for the most expeditious and inexpensive resolution of the action; and (8) the interest of justice. *Kolko v. Holiday Inns, Inc.*, 672 F.Supp. 713, 715 (S.D.N.Y.1987).

Plaintiff argues the action should be transferred from this Court to the Central District of California. She contends that her choice

---

fore they reach the litigation stage. After participating in the Trust's claim review process and rejecting the Trust's offer, plaintiff elected to proceed with litigation and was certified by the Bankruptcy court to do so. Pursuant to the Bankruptcy Court's Administrative Order No. 1, plaintiff must file an amended complaint substituting the Trust for Robins as defendant. Plaintiff has not yet done so, but assures the Court that it will do so shortly. For purposes of this motion, we treat this action as one against the Trust.

**2.** 28 U.S.C. § 1404(a) provides:

> For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought.

**3.** Plaintiff contends, and defendant does not contest, that this action could have properly been brought in the Central District of California at the outset because venue was proper there at the time the action was commenced and because defendant is subject to personal jurisdiction there.

of forum, although originally New York but now California, should be given great weight. *Kolko*, 672 F.Supp. at 715. She also argues that only two treating physicians, Drs. Diamond and Toth, are located in New York, while her expert witness is located in California.[4] Moreover, she argues that because she has resettled in California, it is financially burdensome and inconvenient for her to continue to pursue the action in New York. Lastly, she contends it will not inconvenience defendant to pursue the action in California; the Trust is not a resident of New York, its relevant information and papers are located in Virginia and Minnesota, and the firm representing defendant has a large office in California which represents the Trust in other pending Dalkon Shield cases in the Central District of California.

Defendant argues, on the other hand, that transfer is inappropriate. It first contends that all of the relevant events occurred in New York,[5] and that as a result, the relevant medical records are located there as well. Defendant stresses that crucial witnesses, Drs. Diamond and Toth, are located in New York and that because all the events occurred there, other witnesses with first-hand knowledge of relevant facts who reside in New York may be discovered. Second, defendant argues that New York law will govern the action.[6] Third, defendant claims that transfer to California will increase the expense and difficulty of discovery because several witnesses who need to be deposed are located in New York, thereby necessitating retaining New York, as well as California, counsel to conduct discovery. Additionally, defendant asserts that the records and testimony of these physicians form the cornerstone not only of plaintiff's case but also of defendant's defense. Fourth, defendant argues that a trial of the action in California would be costly and unmanageable: plaintiff's physicians are beyond the subpoena jurisdiction of the California court; the expenses related to the appearance of numerous New York witnesses in California would be prohibitive; and since New York law would apply, defendant again would have to retain New York counsel. Lastly, defendant argues that trying the case in New York would not unduly burden plaintiff because she has named only one witness, an expert, who is located in California and because plaintiff could simply retain the same counsel she used for the Trust claim procedure in New York as her New York counsel.

■ While we are cognizant of the expense to which plaintiff may be put in having to pursue this action in New York, we believe the balance of the relevant considerations warrants denying plaintiff's motion to transfer the action to California. First, plaintiff commenced the action herself in New York. Second, most of the relevant events occurred in New York. *See Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 509, 67 S.Ct. 839, 843, 91 L.Ed. 1055 (1947) (New York has an interest in, and there is a judicial preference for, "having localized controversies decided at home."); *Kolko*, 672 F.Supp. at 715 ("the absence of any contact by the forum state with the transactions underlying the cause of action reduces the weight to be given a plaintiff's choice of forum.") Third, discovery will be centered in New York. Fourth, the majority of the witnesses who are likely to appear at trial are located in New York, and if they do

4. Plaintiff contends Dr. Sherman is deceased and therefore can neither be deposed nor testify at trial. Consequently, she contends, it makes little difference to either herself or defendant if Dr. Sherman's records are subpoenaed from New York or California.

5. The device was inserted into plaintiff in New York. While the device was used by plaintiff, she resided in New York. The device was removed in New York. Plaintiff's pelvic inflammatory disease was treated, and her infertility was diagnosed, in New York. And plaintiff's husband was treated for infertility in New York.

6. When a case is transferred pursuant to § 1404(a), the transferee forum must apply the law that the transferor forum would have applied. *Ferens v. John Deere Co.*, 494 U.S. 516, 110 S.Ct. 1274, 108 L.Ed.2d 443 (1990). If we retained the action, we would apply New York state choice of law rules since New York is the state in which we sit. *See Klaxon Co. v. Stentor Mfg. Co.*, 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941). Under New York choice of law principles, we would likely apply New York substantive law to the action because New York is the jurisdiction with the greatest interest in the litigation. *See RPJ Sportswear, Inc. v. Xylo Tex, Ltd.*, 681 F.Supp. 225 (S.D.N.Y.1988).

not wish to appear voluntarily, they would be subject to a subpoena in New York but beyond the subpoena power of the California court. Fed.R.Civ.P. 45(c)(3)(A)(ii) and 45(e); *See Anchor Savings Bank v. Transamerica Ins. Co.*, 634 F.Supp. 398 (S.D.N.Y.1986). Fifth, plaintiff has identified only one witness who resides in California and is expected to testify at trial, an expert. *Babbidge v. Apex Oil Co.*, 676 F.Supp. 517 (S.D.N.Y.1987) (location of expert witness is entitled to little weight in deciding whether to transfer action). Sixth, it would be very expensive to transport and provide accommodations for the New York witnesses in connection with their trial testimony in California. Lastly, New York law likely governs the action. *See Heyco, Inc. v. Heyman*, 636 F.Supp. 1545, 1550 (S.D.N.Y.1986) (one factor to consider in determining whether transfer is appropriate is which state's law is to apply; federal court is better able to apply the state law of the state in which it sits than that of a state encompassed by another district); *Kreisner v. Hilton Hotel Corp.*, 468 F.Supp. 176, 179 (E.D.N.Y.1979) ("[C]onstruction of state law is best left to courts most familiar with it.").

## CONCLUSION

For the foregoing reasons, plaintiff's motion to transfer venue to the Central District of California pursuant to 28 U.S.C. § 1404(a) is denied.

**SO ORDERED.**